IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LARRY P. BOWEN,                          Case No. 6:17-cv-00529-MA

            Plaintiff,                       OPINION AND ORDER

   v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

            Defendant.

MARK MANNING
Harder Wells Baron & Manning, PC
474 Willamette Street, Suite 200
Eugene, OR 97401

    Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

RYAN TA LU
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Larry P. Bowen seeks judicial review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, the Court affirms the Commissioner's decision.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed his DIB application on October 10, 2013, alleging disability beginning October 4, 2013, due to obesity, left shoulder impingement/strain status post-surgery; post-traumatic stress disorder ("PTSD"); and degenerative disc disease of the cervical and lumbar spine. Tr. Soc. Sec. Admin. R. ("Tr.") at 53, ECF No. 8. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on October 7, 2015, at which Plaintiff appeared with his attorney and testified. A vocational expert, Francene M. Geers, also appeared at the hearing and testified. On November 9, 2015, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff suffered an on-the-job injury to his left shoulder in March 2012. Tr. 624. Plaintiff experienced pain and swelling, with a suspected rotator cuff tear. Tr. 625. Physical therapy did not improve Plaintiff's condition, and he underwent left shoulder arthroscopy in July 2012. Tr. 625. During surgery, Plaintiff was discovered to have significant fraying at the biceps tendon attachment

and tendon tearing, with degenerative changes. Tr. 625. Following surgery, Plaintiff returned to physical therapy and was prescribed narcotic medication for pain. Tr. 625. In September 2012, Plaintiff experienced an abrupt onset of pain and inflammation following an aggressive physical therapy session. Tr. 625. A CT scan showed possible displacement of the bicep tenodesis anchor and a second surgery was recommended. Tr. 626. In March 2013, Plaintiff underwent a second left shoulder arthroscopy. Tr. 626. During surgery, it was discovered the anchor was not displaced, but the tendon was ruptured below the attachment, which was surgically repaired. Tr. 626. In April 2013, Plaintiff returned to physical therapy and was noted to have arthritic shoulder changes and his bicep was believed to be stabilized. Tr. 626. In May 2013, Plaintiff reported significant improvement and was released to return to work with a ten pound restriction on the left. Tr. 626. In June 2013, Plaintiff complained of left arm swelling and inflammation. Tr. 626. In August 2013, Plaintiff was performing light duty desk work, doing home exercises, and taking Cymbalta and Aleve for pain control. Tr. 626.

Plaintiff was born in 1961, and was 52 years old on the alleged onset of disability date. Plaintiff completed high school and one year of college. Tr. 181. He served in the United States Army from 1978 to 2000, and was honorably discharged. Tr. 162. Plaintiff earned an Oregon State Police Certificate, and has past relevant work as a state trooper, corrections officer, and fish and game warden. Tr. 40, 59, 191.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See*

3 - OPINION AND ORDER

*Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work that exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ found that Plaintiff meets the insured status requirements through December 31, 2018. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 4, 2013, the alleged onset date. At step two, the ALJ found that Plaintiff has the following severe impairments: left shoulder impingement/strain status post-surgery; PTSD; and degenerative disc disease of the cervical and lumbar spine. Tr. 53. At step three, the ALJ found that Plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform light work as defined as:

> lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently with both arms; pushing/pulling up to ten pounds occasionally and five pounds frequently with the dominant left hand; and sitting, standing, and walking up to six hours each in an eight hour work day. He is further limited to occasional reaching overhead and in all directions with the bilateral upper extremities. He can have occasional exposure to extreme cold and vibrations. [Plaintiff] is able to frequently climb ramps and stairs, but he can occasionally climb ladders, ropes, and scaffolds. He is also able to occasionally stoop, kneel, crouch, and crawl. He can have only occasional public contact.

Tr. 56.

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work. At step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. The ALJ identified such representative occupations as marker, and bakery line worker.

Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act from October 4, 2013 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, Plaintiff contends the following errors were committed: (1) the ALJ improperly evaluated his testimony; and (2) the ALJ improperly evaluated the opinion of his treating physician, Brock Millet, M.D. The Commissioner argues that the ALJ's decision is supported by substantial evidence and is free of legal error. Alternatively, the Commissioner contends that even if the ALJ erred, Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison*, 759 F.3d at 1010.

## DISCUSSION

### I. The ALJ Did Not Err in Discounting Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or

adverse side effects of any pain medication, and relevant character evidence.[1] *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

At the hearing, Plaintiff testified that he lives with his wife and has two children in college. Plaintiff testified that he walks three to four miles each day. Tr. 17. Plaintiff stated that he is able to do some yard work and mows the lawn, but he breaks up the work over a couple of days. Tr. 18. Plaintiff stated that he is able to drive, shop, buy groceries, does laundry, cooks, and cleans. Tr. 18-19. Plaintiff also stated that he takes breaks when driving for long distances because his left arm becomes sore. Tr. 19.

Plaintiff is left-hand dominant. Tr. 23. Plaintiff stated that he is able to work on a computer. Tr. 23. Plaintiff described that his left arm bothers him when working for an extended duration on the keyboard and fine manipulation becomes difficult. Tr. 30. He noted that when he works on the computer, he mostly clicks on information and is not typing. Tr. 30.

Plaintiff stated that he takes medication for hypertension, diabetes, and for pain and depression. Plaintiff noted he also takes over the counter Advil and Aleve for pain. Tr. 24. Plaintiff stated that Cymbalta has worked very well for him, reducing his pain and depression. Tr. 24, 242.

Plaintiff testified that he is unable to work because moving around too much aggravates his shoulder, causing swelling in his neck and arm, and down to his hand. Tr. 26. Plaintiff also stated

---

[1] The Court observes that on March 28, 2016, Social Security Ruling ("SSR") 16-3p became effective, and it eliminated the use of the term "credibility." The ALJ's decision in this case was issued November 9, 2015. The Court has previously determined that SSR 16-3p does not apply retroactively because 42 U.S.C. § 405(g) does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking. *Smith v. Colvin*, No. 6:15-cv-01625-MA, 2017 WL 388814, at *4 n.2 (D. Or. Jan. 27, 2017). *See, e.g., Wright v. Colvin*, No. 15-cv-02495-BLF, 2017 WL 697542, *9 (N.D. Cal. Feb. 22, 2017) (holding SSR 16-3p does not apply retroactively); *Thayer v. Colvin*, No. 2:16-cv-00545-DWC, 2017 WL 132450, at *7 (W.D. Wash. Jan. 13, 2017) (same). The Court adheres to that rationale here.

that he is unable to work at a keyboard for a long period of time due to swelling and pain in his arm. Tr. 26. Plaintiff testified that he avoids lifting, digging, or swinging a hammer, and can no longer use a screwdriver over his head. Tr. 33. Plaintiff also can no longer bow hunt, but must rifle hunt, and must use his right arm to cast his fishing pole. Tr. 34.

Plaintiff described that he is being treated for PTSD. Tr. 26. Plaintiff described having anger issues. Tr. 27. He attends individual counseling and group therapy. Tr. 31. Plaintiff stated that he was honorably discharged from the Army after serving 22 years, and received a Meritorious Service Medal and a Bronze Medal for Valor in combat. Tr. 29-30.

In an October 29, 2013 Adult Function Report, Plaintiff reported that in a typical day, he wakes between 5 and 6 a.m., helps get his son to school, walks the dog, then performs chores around the house (such as laundry and cooking), stretches and ices as necessary, then prepares dinner. Tr. 206-08. Plaintiff indicated it is difficult putting on a shirt and jacket, that he has adjusted his bathing routine, but otherwise has no difficulty performing personal care. Tr. 207. Plaintiff has no difficulty preparing full meals in the normal amount of time. Tr. 207. Plaintiff also has no difficulty driving short distances or walking, and shops for clothes or groceries two to three times a week. Tr. 208. Plaintiff noted he can walk for four miles, has no difficulty concentrating, can follow written and spoken instructions, and has no trouble with authority figures. Tr. 210-11.

In the decision, the ALJ offered specific, clear and convincing reasons for the adverse credibility determination, including: (1) inconsistency with objective medical records; (2) lack of treatment and conservative treatment; and (3) inconsistency with reported daily activities.

First, the ALJ found the objective medical evidence did not support the degree of limitations alleged by Plaintiff. Contradiction with the medical record is a valid credibility consideration.

8 - OPINION AND ORDER

*Carmickle*, 533 F.3d at 1161; *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). The ALJ discussed that in Plaintiff's disability application, he alleged he is limited in his ability to lift, reach, walk, and use his hands. The ALJ also observed that Plaintiff testified at the hearing that he cannot work because activities that require him to move around too much cause painful aching and swelling in his arms, and that he cannot use a keyboard for long periods. Tr. 57. The ALJ found Plaintiff's allegations inconsistent with records following his second surgery. Tr. 57. The ALJ detailed treatment records from August 28, 2013, where Plaintiff's then treating physician indicated that his range of motion was nearly normal, despite some pain with overhead lifting. Tr. 57, 302. The ALJ also discussed a second medical evaluation on August 27, 2013, showing Plaintiff's shoulder strength was 5/5, he had 5/5 strength in the left bicep muscle group, had normal hand function, and normal grip strength. Tr. 57, 627, 638-42. Additionally, as the ALJ detailed, Plaintiff was released to light duty in October 2013 with near normal strength. Tr. 300. As the October 2013 treatment note cited by the ALJ reveals, the only restriction at that time was overhead lifting. Tr. 300. The ALJ's findings are wholly supported by substantial evidence, are rational interpretation of the record, and will not be disturbed. *Molina*, 674 F.3d at 1111, 1113.

Second, the ALJ discounted Plaintiff's credibility based on the lack of treatment. Evidence of a claimant's favorable response to minimal and conservative treatment can undermine credibility. *Burch*, 400 F.3d at 681 (holding lack of treatment is a valid credibility determination); *Tommasetti*, 533 F.3d at 1039-40 (noting conservative treatment including anti-inflammatory medication and physical therapy undermined allegations of disabling pain); *Parra v. Astrue*, 481 F.3d 742, 751 (9th

9 - OPINION AND ORDER

Cir. 2007) (holding that use of over-the-counter pain medication may be "sufficient to discount a claimant's testimony regarding severity of an impairment"). In the decision, the ALJ noted that on the alleged onset date, Plaintiff was released to light duty work with near normal strength by his then treating physician, Jason S. Bell, M.D., with his only restriction to overhead lifting. Tr. 57, 300. The ALJ correctly indicated that in early 2014, Plaintiff reported using only over-the-counter medications for his pain. The ALJ discussed that at an examination in April 2014, Plaintiff showed minimal swelling and full range of motion in the left shoulder, with difficulty with internal rotation. Tr. 57, 660. And, as the ALJ accurately indicated, there is no ongoing, consistent treatment for his left shoulder. The ALJ's findings are fully supported by substantial evidence.

Plaintiff argues that the ALJ erred in discounting Plaintiff's testimony that he suffered swelling in his upper left extremity resulting in his need for frequent breaks when performing fine and gross manipulation. Plaintiff contends that the ALJ erred by isolating a single treatment note in April 2014 that showed minimal swelling. Pl.'s Br. at 12, ECF No. 13. The court disagrees.

Examining the longitudinal record of Plaintiff's reported arm and hand swelling, as the ALJ appropriately found, Plaintiff's swelling improved following the second surgery. *See* Tr. 595, 597, 609, 611, 613, 615, 619, 647. After Plaintiff's workers compensation claim was closed in October 2013, there is no evidence of ongoing, consistent treatment for his left shoulder, with minimal objective evidence of swelling. Tr. 660. Moreover, Plaintiff reported significant improvement in the swelling and pain once he started taking Cymbalta in August 2013. Tr. 647-48.

To be sure, after his alleged onset of disability date, in the five treatment notes with his treating provider Brock Millet, M.D., before the court, Plaintiff *only* complained of arm pain and swelling on April 25, 2014, which Dr. Millet described as minimal. *See* Tr. 659, 662, 673, 729, 732.

Based the record before me, the ALJ rationally interpreted the record to conclude that Plaintiff's limitations from the alleged arm and hand swelling is not as severe as alleged. *Molina*, 674 F.3d at 1113. Accordingly, the court concludes the ALJ's findings are wholly supported by substantial evidence.

The ALJ also discussed that Plaintiff's alleged neck and low back pain are supported by minimal findings. The ALJ detailed that in October 2014, Plaintiff complained of low back pain, and on examination had tenderness to palpation and muscle spasms in the lumbar spine. Tr. 57, 732-34. And, the ALJ discussed that in July 2015 Plaintiff again reported low back pain, but admitted he had been moving boxes in his garage which had aggravated his pain. Tr. 57, 729-30. As the ALJ correctly indicated, Plaintiff consistently has demonstrated a normal gait. Tr. 663, 730, 734. The ALJ's findings are wholly supported by substantial evidence. Thus, based on the minimal findings of neck and back pain, the ALJ reasonably concluded Plaintiff is not as limited as alleged. The ALJ's interpretation of the record is reasonable and will not be disturbed. *Molina*, 674 F.3d at 1113. When combined, the ALJ's first and second reasons readily provide clear and convincing support for the ALJ's adverse credibility determination.

Third, the ALJ discounted Plaintiff's testimony regarding his symptoms because it is inconsistent with his reported activities of daily living. Inconsistencies between a claimant's self-reported daily activities and the degree of impairment alleged may support an adverse credibility finding. *Molina*, 674 F.3d at 1113; *Berry*, 622 F.3d at 1235. The ALJ may properly discredit a claimant's testimony where the claimant reports participation in daily activities that are transferrable to a work setting, or those activities contradict a claim of a totally disabling impairment. *Molina*, 674 F.3d at 1113. The ALJ discussed Plaintiff's hearing testimony that he is able to go shopping,

perform household chores, mows the lawn, and drives a car. Plaintiff also testified that he is able to walk four miles per day, is able to use a computer, and was able to go hunting with friends. As the ALJ appropriately determined, Plaintiff's activities are inconsistent with his assertion that moving around too much causes disabling pain and swelling in his arm. The ALJ's findings are wholly supported by substantial evidence in the record as a whole, and the ALJ could reasonably conclude that Plaintiff's daily activities are inconsistent with his allegations of total disability. *Id.*

In short, the ALJ provided specific, clear and convincing reasons to support the adverse credibility determination. The ALJ did not err.

## II. The ALJ Did Not Err in Evaluating Dr. Millet's Opinions

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim,* 763 F.3d at 1160; *Garrison,* 759 F.3d at 1012; *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted) (alterations in original); 20 C.F.R. § 404.1527(c). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

If the treating physician's opinion is contradicted, the ALJ must consider how much weight it is entitled to considering the factors in 20 C.F.R. § 404.1527(c)(2-6). The factors include the length of the treatment relationship, the frequency of examination, the nature and supportability of

the opinion, and its consistency with other evidence in the record as a whole. 20 C.F.R. § 404.1527(c)(2-6); *Ghanim*, 763 F.3d at 1161. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017); *Ryan v. Comm'r Soc. Sec. Admin.*, 528 F.3d 1194, 1198 (9th Cir. 2008). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Plaintiff argues that the ALJ erred in failing to provide specific and legitimate reasons for rejecting the opinion of his treating physician Brock Millet, M.D.[2] Plaintiff established care with Dr. Millet in October 2013. In May 2014, Dr. Millet completed a Medical Evaluation form provided by Plaintiff's attorney. Tr. 701. In that evaluation, Dr. Millet indicated that Plaintiff has cervical, upper thoracic, glenohumeral joint and acromioclavicular ("AC") joint arthritis; a partial bicep tendon tear status post two surgical interventions; and neuropathy of the left arm/hand/neck. Tr. 701. Dr. Millet noted that Plaintiff is left hand dominant and that he has normal arm and hand strength for short usage, but develops pain, swelling and tingling in his left arm requiring frequent breaks. Tr. 701. Dr. Millet indicated that Plaintiff's diagnoses were substantiated by ultrasound and MRIs. Tr. 701. Dr. Millet described that Plaintiff has undergone physical therapy and orthopedic interventions, and has been treated with narcotic pain medication and Cymbalta, and that he was

---

[2] Dr. Millet's opinion is contradicted by those of treating physician Jason Bell, M.D.; examining physicians Todd Lewis, M.D. and Susan Bottomley, O.T.R.; and nonexamining agency physicians Roy C. Brown, M.D. and Susan Moner, M.D., whose evaluations are unchallenged by Plaintiff. Tr. 72-74, 83-87, 624-32, 633-45, 656. The ALJ therefore was required to provide a specific and legitimate reason, backed by substantial evidence, to reject Dr. Millet's opinion about Plaintiff's alleged manipulative limitations.

13 - OPINION AND ORDER

currently not prescribed any medications. Tr. 702. Dr. Millet opined that Plaintiff could stand, walk, and sit for six hours in an eight hour workday, could occasionally lift up to 20 pounds, and is limited to two hours of fine and one hour of gross manipulations with his left hand before requiring a five to ten minute break. Tr. 702.

In the decision, the ALJ found Dr. Millet's opinion of Plaintiff's exertional limitations consistent with the record as a whole, but gave no weight to his opinion of Plaintiff's manipulative limitations because his examination notes did not include any objective findings to support them. Tr. 58. Plaintiff argues the ALJ erroneously rejected Dr. Millet's opinion that he is limited to two hours of fine and one hour of gross manipulations with his left hand. The court disagrees.

The lack of objective, clinical findings to support limitations or restrictions is specific and legitimate basis for rejecting a treating physician's opinion. *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding ALJ provided specific and legitimate reasons for rejecting treating physician's opinions where it was unsupported by clinical findings, or physician's own treatment notes). Similarly, a conflict between a physician's treatment notes and opinion is a specific and legitimate reason to reject that opinion. *Ghanim*, 763 F.3d at 1161 ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician [.]"); *accord Hanlon v. Comm'r Soc. Sec. Admin.*, Case No. 1:16-cv-01822-MA, 2017 WL 3895554, * 6 (D. Or. Sept. 6, 2017) (finding incongruity between opinion and treatment notes a specific and legitimate basis to discount treating physician's opinion).

Contrary to Plaintiff's contention, as the ALJ correctly found, Dr. Millet's treatment notes do not contain objective findings supporting the manipulative restrictions. In the decision, the ALJ

discussed an April 2014 treatment note from Dr. Millet. Tr. 58. Indeed, Plaintiff first complained of numbness and swelling with use of his left arm to Dr. Millet on April 25, 2014. Tr. 659. At that visit, Plaintiff wanted to discuss disability and fill out paperwork. Tr. 659. Dr. Millet's treatment note reflects that Plaintiff complained of chronic left arm pain and left arm swelling. Tr. 659. Plaintiff informed Dr. Millet that any lifting or repetitive motions with his left hand causes pain and numbness, although Plaintiff noted he did not have much swelling because he had been resting his arm. Tr. 659. On examination, Dr. Millet noted that Plaintiff had normal muscular development with nearly full range of motion, with "a minimal amount of swelling." Tr. 660.

As discussed above, the April 2014 treatment note is the only indication in Dr. Millet's records before the court where Plaintiff complained of arm and hand swelling to Dr. Millet. To be sure, Dr. Millet's treatment notes preceding his May 3, 2014 opinion do not reflect the severe manipulative restrictions he assessed, nor do they indicate on-going difficulty with swelling, tingling or neuropathy. *See* Tr. 673, 662, 659. Indeed, Dr. Millet's October 2013 treatment note indicates that Plaintiff wanted to establish care, and Dr. Millet's neuromuscular examination revealed 5/5 strength and full range of motion in the shoulders. Tr. 673-75. Notably, Dr. Millet's next treatment note in March 2014 reveals that Plaintiff complained of acid reflux, and contains no mention of edema, neuopathy or swelling. Tr. 662-64. Moreover, Dr. Millet's treatment notes are devoid of any nerve conduction studies ("NCS") or electromyography ("EMG") tests to verify neuropathy, or reveal any grip strength testing to support his opinion of manipulative restrictions. Therefore, as the ALJ appropriately found, the Dr. Millet's treatment notes as a whole reflect "minimal swelling" and fail to provide any objective findings to support the assessed manipulative restrictions. The court readily concludes that the ALJ provided a specific and legitimate reason, backed by substantial

evidence in the record as a whole, for rejecting Dr. Millet's manipulative restrictions. *See Molina*, 674 F.3d at 1111-12 (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Valentine*, 574 F.3d at 692-93 (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion).

Plaintiff appears to suggest Dr. Millet reviewed and relied upon the testing performed by Todd J. Lewis, M.D., and Susan Bottomley, O.T.R., to support his opinion that Plaintiff has manipulative restrictions. Plaintiff's contention misses the mark. The opinion of a physician who relies upon the same clinical findings as another physician but "differs only in his or her conclusions" does not constitute substantial evidence. *See Orn*, 495 F.3d at 632. Neither Dr. Lewis nor Ms. Bottomley assessed Plaintiff with manipulative restrictions based on their extensive testing.

As the ALJ discussed, Dr. Lewis conducted an Independent Medical Evaluation on August 27, 2013. Tr. 624. At that time, Plaintiff reported arm swelling and inflammation occurs daily. Tr. 626. However, Plaintiff also reported that he was recently prescribed Cymbalta, and "almost all of the inflammation resolved." Tr. 626. On examination, Dr. Lewis found no atrophy, swelling or edema of either upper extremity and near normal range of motion in Plaintiff's left shoulder and elbow with 5/5 strength. Tr. 627. Dr. Lewis also found normal radial pulses and capillary filling bilaterally, with negative Tinel's signs at the ulnar nerve at the wrist and elbow, the median nerves at the wrists and the lateral cervical spine. Tr. 628. Dr. Lewis found normal cervical root function, and mildly decreased sensation throughout the left hand from the wrist distally. Tr. 628. Dr. Lewis opined that Plaintiff is capable of performing modified work as defined in the Work Capacity Evaluation performed by Ms. Bottomley. Tr. 632.

Ms. Bottomley performed a three and a half hour Work Capacity Evaluation ("WCE") on August 27, 2013. Tr. 633. Plaintiff reported that he has swelling and inflammation from his left ear down to his left fingertips, but that taking Cymbalta greatly reduced the swelling and associated pain. Tr. 635. At the time of the WCE, Plaintiff rated his pain ranging from one to three out of 10, and noted he uses ice and rest to manage the swelling in his left arm. Tr. 635. Plaintiff reported that he has been on modified work status performing office work since May 2013. Tr. 636. Plaintiff informed Ms. Bottomley that he has no difficulty sitting all day, performs a lot of keyboarding and takes breaks to get the feeling back in his left arm. Tr. 637. Plaintiff indicated that standing and walking can cause inflammation, but it does not restrict his tolerance because he walks three or four miles each day. Tr. 637. Plaintiff also complained of very intermittent hand swelling. Tr. 638.

On physical capacity testing by Ms. Bottomley, Plaintiff demonstrated normal hand functioning, including fine motor dexterity. Tr. 639. Plaintiff completed a 30 minute "work circuit" set up by Ms. Bottomley. Tr. 642. Plaintiff completed the 30 minute circuit without making changes to the weights, worked at "good pace and there are no pain or protective behaviors exhibited." Tr. 642. Plaintiff reported no change in his pain, and perceived inflammation above the clavicle in neck, but Ms. Bottomley stated the inflammation could not be appreciated and she observed "no apparent swelling in the left extremity." Tr. 642. When Ms. Bottomley made a follow up telephone call the next day, Plaintiff reported a little soreness, but "nothing drastic." Tr. 642. Ms. Bottomley found normal 5/5 motor strength in the shoulders bilaterally and 5/5 strength in the left bicep. Tr. 642. In the residual functional capacity, Ms. Bottomley opined that Plaintiff has no limitations with sitting, standing or walking, no limitations with repetitive grasping with the left hand, and is limited to 20 pounds overhead lifting. Tr. 645.

17 - OPINION AND ORDER

Dr. Lewis and Ms. Bottomley conducted a range of tests, including grip strength and manipulative testing, and concluded that Plaintiff does not have any manipulative limitations. The ALJ thoroughly discussed Dr. Lewis and Ms. Bottomley's evaluations in the decision and gave their opinions great weight – findings that are unchallenged by Plaintiff. Tr. 58-59. Plaintiff's contention that Dr. Millet's review of their testing, yet reaching a different conclusion, somehow supports Dr. Millet's restrictions, is simply without merit. Therefore, the court readily concludes the ALJ has provided a specific and legitimate reason, backed by substantial evidence in the record as a whole, for rejecting Dr. Millet's assessed manipulative restrictions. Consequently, the ALJ did not err.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to Plaintiff is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this __19__ day of APRIL, 2018.

_/s/ Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge